UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GAIL M.,[1] | ) |
| | ) No. 20 CV 5693 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| KILOLO KIJAKAZI, Commissioner of Social Security, | ) |
| | ) |
| | ) June 26, 2023 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Gail M. seeks disability insurance benefits ("DIB") asserting she is disabled by various medical conditions, including complications from knee replacement surgeries, MS, and high blood pressure. She brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security partially denying her application for DIB. Before the court are cross motions for summary judgment. For the following reasons, Gail's motion is granted, and the government's is denied:

**Procedural History**

Gail filed a DIB application in January 2014, alleging disability onset beginning on December 15, 2013. (Administrative Record ("A.R.") 18.) At the administrative level, her application was denied initially and upon reconsideration. (Id.) Gail appeared with her attorney at a July 2016 hearing, during which she and

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Plaintiff's first name and last initial in this opinion to protect her privacy to the extent possible.

a vocational expert ("VE") testified. (Id.) The Administrative Law Judge ("ALJ") presiding over the matter ruled in February 2017 that Gail was not disabled. (Id. at 28.) The Appeals Council did not alter this decision. (Id. at 6.) Gail then sought judicial review in federal court. (Id. at 1245.) In June 2019 this court remanded the agency decision, finding that the ALJ improperly: (1) assigned only partial weight to treating provider Dr. Anita Pillai's opinions; and (2) evaluated Gail's symptom allegations. *Gail M. v. Berryhill*, No. 18 CV 1168, Dkt. No. 34 at 5, 8 (N.D. Ill. June 11, 2019). The Appeals Council then vacated the Commissioner's final decision and remanded the case to the ALJ for further proceedings. (A.R. 1176.)

Gail testified before the ALJ during her second hearing in April 2020, along with her husband and a VE. (Id.) The ALJ ruled in May 2020 that Gail was disabled beginning on April 1, 2016, but was not disabled between the alleged onset date of December 15, 2013, and March 31, 2016. (Id. at 1195.) Gail again seeks judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C § 636(c); (R. 8, 26).

## Analysis

Gail argues that the ALJ's decision requires a second remand because the ALJ: (1) improperly evaluated her subjective symptoms; (2) failed to assign controlling weight to her treating physicians' opinions; and (3) crafted a flawed residual functional capacity ("RFC"). (R. 15, Pl.'s Mem. at 5, 11-14.) When reviewing an ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and the decision has the support of substantial evidence, *see*

2

*Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation and citations omitted). This deferential standard precludes the court from reweighing evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels it." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). But the ALJ must "provide a 'logical bridge' between the evidence and his conclusions," *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021), providing enough detail "to enable a review of whether the ALJ considered the totality of a claimant's limitations," *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). Having considered the record, the court finds that the ALJ failed to properly consider Gail's subjective symptoms, warranting remand.

**A.   Subjective Symptom Assessment**

Gail argues that when assessing her symptom statements, the ALJ failed to examine the objective medical record in its totality, cherry-picked evidence to support his findings, and ignored her husband's testimony in support of her claims. (R. 15, Pl.'s Mem. at 12, 14.) When assessing a claimant's subjective reports, an ALJ considers: (1) objective medical evidence; (2) daily activities; (3) frequency and intensity of symptoms; (4) medication, treatment, and other measures to relieve pain or other symptoms; and (5) functional limitations. *See* SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). An ALJ's symptom evaluation is generally entitled to great deference because the ALJ

3

observed the claimant's credibility firsthand. *See Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). As such, a court will not disturb a symptom evaluation if it is based on specific findings and evidence and not "patently wrong"—that is, so long as it does not "lack[] any explanation or support." *Id.* at 815-16 (citing *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008)); *see also Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013).

The ALJ found "not persuasive" Gail's allegations that she: (1) had limited use of her left hand; (2) needed to elevate her legs and use crutches or a walker to ambulate effectively; and (3) suffered from a foot-drop condition. (A.R. 1186-87.) Each claim is significant to Gail's application because her alleged disability "relied primarily on her assertion that the severity of problems affecting her lower extremities prevented her from performing any work-related activity." (Id. at 1186.) As to the first claim, the record supports Gail's statements regarding numbness in her left hand resulting from carpal tunnel syndrome, for which she underwent surgery in February 2015. (Id. at 816.) At her 2016 hearing, she testified that she could lift only about eight pounds and needed help buttoning her clothes because of the numbness. (Id. at 47-48.) Dr. Pillai's treating source statement mentions Gail's hand numbness post-surgery and limited ability to use her left arm and hand. (Id. at 876.) Medical records also show that Gail experienced numbness in her left hand before her surgery, (see, e.g., id. at 638, 770), and she was diagnosed with left carpal tunnel syndrome "based on history, physical examination and EMG nerve conduction studies," (id. at 816).

4

These examples expressly contradict the ALJ's claim that "there was no evidence showing progression of symptoms that lead to recommendation of surgery." (Id. at 1186.) While ALJs need not address every piece of evidence in the record, "an ALJ may not ignore an entire line of evidence contrary to its ruling." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022). Yet by failing to address this evidence, that is what the ALJ did.

That said, an error is harmless if a court can conclude "'with great confidence' that the ALJ would reach the same decision on remand." *Weaver v. Berryhill*, 746 Fed. Appx. 574, 578 (7th Cir. 2018) (citing *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011)). That is the case here. Although the medical records confirm Gail's hand numbness, there is no indication that the numbness interfered with her ability to perform work-related activity during the relevant period of disability. Notably, in her December 2014 function report, Gail attributed her difficulty using her arms and hands to her need to use a cane to walk, not to her hand numbness. (See A.R. 254.) Because the outcome is not patently wrong, reversal is not required on this front. *See Grotts*, 27 F.4th at 1279 (citing *Deborah M.*, 994 F.3d at 879).

However, Gail's complaint regarding the ALJ's treatment of her alleged need to elevate her leg requires a different outcome. The ALJ rejected Gail's claims that she must elevate her leg throughout the day because the record lacks evidence of edema or swelling. (A.R. 1187-88.) Although Gail cited post-surgical swelling as the reason for elevating her leg during the 2020 hearing, (id. at 1212), she explained during the 2016 hearing that her knee stiffness caused a tightness or locking, which

5

she resolved by elevating her leg, (id. at 40). While the record does not include any physician recommending elevation, ALJs may not disregard testimony "simply because it is not corroborated by objective medical evidence." *Jacquelyen D. v. Kijakazi*, No. 20 CV 2951, 2023 WL 1862951 at *9 (N.D. Ill. Feb. 9, 2023) (citing *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015)); SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). And on numerous occasions Gail's physicians referenced knee stiffness as a principal concern of Gail's, which may support her testimony. (See, e.g., A.R. 290 (neurologist notes dated Nov. 4, 2013), 703 (Dr. Pillai notes dated Nov. 11, 2014), 845 (Dr. Pillai notes dated Feb. 5, 2015), 881 (neurologist notes dated Jan. 1, 2015).) On remand the ALJ must review this evidence when assessing Gail's credibility regarding her need to elevate her leg.

Next, the ALJ cherry-picked evidence when finding Gail's testimony that she began using crutches in 2013 unsupported because the record indicates she used a cane and walker before April 1, 2016. (Id. at 1187.) Gail argues that the ALJ needlessly focused on the type of ambulatory device she used before being found disabled as of April 1, 2016. (R. 15, Pl.'s Mem. at 12-13; see also R. 22, Pl.'s Reply at 8.) Gail's testimony on this point is admittedly confusing, (see A.R. 44-45, 1212), but her physical therapy notes reflect that she regularly required more ambulatory support than a single straight cane could provide. Gail explained in her March 2014 function report that she was prescribed a cane and walker after her knee surgery, and she used the cane "all the time" and the walker at night. (Id. at 220.)

6

Between April 2014 and May 2015, the only ambulatory aides referenced in the record are a straight cane or a small-base quad cane. (Id. at 92, 220, 252, 536, 590, 592, 598, 620.) Indeed, Gail states in her November 2014 function report that she uses a cane and a brace or splint every day, but she left unchecked the boxes indicating use of crutches or a walker. (Id. at 252.)

But by May 2015, physical therapy records indicate that Gail's gait quality was poor when using one cane and that she had an increased risk for falls when ambulating with it. (Id. at 991.) These records also indicate that she used a walker or two canes to ambulate. (Id.) Similarly, her June 10, 2015 physical therapy notes explain that her "[a]mbulation with [one] cane is significantly imbalanced with slow cadence" and that her accompanying foot drag increases her risk for falls, but that her gait quality is "best observed" when using her rolling walker. (Id. at 973.) Notes from this visit also state that she "prefers the freedom" of using two canes to ambulate. (Id.) Physical therapy notes from the month of July 2015 again show a continued recommendation for Gail to use the rolling walker and two canes. (Id. at 949 (July 1), 946 (July 8), 938 (July 10), 899 (July 29).) Together, these records support Gail's testimony that she began using a walker or two canes consistently, both of which require the use of both hands to ambulate before April 1, 2016. Ignoring this line of evidence and instead focusing only on evidence from 2014 indicating that Gail used a single-point cane constitutes improper cherry-picking. *Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020).

7

The ALJ also found that Gail's testimony regarding the severity of her foot drop was inconsistent with the record but failed to adequately explain the finding. (A.R. 1187.) Gail testified in July 2016 that she has had a foot drop since her 2013 surgery, which makes it impossible to clear her heel while walking, causing her foot to drag behind her. (Id. at 42.) The ALJ relied on July 2015 treatment notes showing that Gail "exhibited improvement of foot drop after completing physical therapy and wearing the prescribed [ankle foot orthosis] brace." (Id. at 1187 (citing id. at 842).) The ALJ acknowledged this treatment note but discounts it by citing a lack of gait evaluation, manual muscle testing, "or other objective measure of muscle group strengths in the claimant's extremities to define the claimant's 'baseline weakness.'" (Id. (citations omitted).)

The ALJ did not explain how Gail's foot-drop testimony was inconsistent. Further, he ignored evidence supporting Gail's claim that she had this condition before the date upon which the ALJ found her to be disabled, which is reversible error. *See Grotts*, 27 F.4th at 1278. Physical therapy notes spanning from May 12, 2015, through February 6, 2016, describe Gail's foot drop issue. (Id. at 848, 899, 906, 924, 972, 991, 1020.) Some of the notes reflect that her foot drop persisted despite using a dorsi-strap and an ankle foot orthosis, (see, e.g., id. at. 899, 1020), that she was at an increased risk for falls while walking because of inadequate foot clearance, (see, e.g., id. at 899), and that her foot drop was one cause for her "significant difficulty with ambulation," (id. at 848). The objective medical evidence

8

appears to directly support Gail's testimony, and the ALJ should reconsider it on remand.

Finally, the ALJ gave "no weight" to Gail's husband Robert's 2020 hearing testimony regarding Gail's foot drop because it parroted Gail's, which the ALJ found was not supported by the objective evidence. (Id. at 1195.) Robert testified that: (1) Gail has used crutches, a cane, and a walker to ambulate around the house since her 2013 knee replacement surgery, although she principally used the crutches; (2) could not cook because she required the assistance of her family and needed to lean on structures for support; (3) had several falls because of bad gait; (4) had difficulty holding items in her left hand because of numbness; and (5) elevated and iced her legs at home. (Id. at 1217-19.) The ALJ "need not evaluate in writing every piece of testimony and evidence submitted," *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (internal citations omitted), but where testimony constitutes a separate line of evidence, it must be considered, *Books v. Chater*, 91 F.3d 972, 980 (7th Cir. 1996). Robert's testimony does not quite meet that mark. While his testimony provided further color to Gail's own 2020 hearing testimony regarding her need for support from countertops while performing tasks at home, hand numbness, need to elevate her leg, and ambulation device usage, it does not provide new information that is not present elsewhere in the administrative record. (See id. at 1210-12, 1215, 1218-19.) Even if Robert's testimony did house information unique from the rest of that within the record, Gail fails to explain how it would have changed the ALJ's conclusion if it had been considered. "Merely identifying

9

administrative error is not enough," and so remand is not necessary as to Robert's testimony. *Joseph M. v. Saul*, No. 18 CV 5182, 2019 WL 6918281, at *14 (N.D. Ill. Dec. 19, 2019) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

**B.     Opinion Evidence**

Gail argues that it was improper for the ALJ to have discounted the opinions of her treating physicians while giving "some weight" to the stale opinions of the state agency medical consultants who examined her in 2014. (R. 15, Pl.'s Mem. at 5, 11.) A treating physician's opinion in cases filed before March 27, 2017—which is the case here—is generally entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (internal quotation and citation omitted). However, "once well-supported contradicting evidence is introduced, the treating physician's [opinion] is no longer entitled to controlling weight and becomes just one more piece of evidence for the ALJ to consider." *Bates*, 736 F.3d at 1099-1100 (internal quotation and citation omitted); *Ray v. Saul*, 861 Fed. Appx. 102, 105 (7th Cir. 2021) (citation omitted). The Seventh Circuit "uphold[s] all but the most patently erroneous reasons for discounting a treating physician's assessment," *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (internal quotation and citation omitted), so long as the ALJ "minimally articulated [their] reasons—a very deferential standard," *Elder*, 529 F.3d at 418 (citation omitted).

Gail argues that the ALJ improperly rejected treating physiatrist Dr. Ellen Voronov's July 2014 letter, which states that Gail was to be "off work until further notice." (A.R. 540; R. 15, Pl.'s Mem. at 6.) The ALJ gave this opinion "no weight" because: (1) it was "conclusory"; (2) it lacked the citation of "a diagnosed medically determinable impairment(s)," a "function-by-function analysis" describing how Gail's impairments limited her ability to perform work-related activity, and specific citations to her treatment notes; and (3) whether one can or cannot work because of a disability "is a legal issue reserved for the Commissioner." (A.R. 1189.) Gail claims that because Dr. Voronov wrote this letter in the course of her actual treatment and not in connection with her DIB application, it should be afforded greater weight. (R. 15, Pl.'s Mem. at 7.) The government counters that the issue is moot because the note is not a medical opinion as contemplated by the regulations. (See R. 21, Govt.'s Br. at 4.) The court agrees with the government.

The regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of [the] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). The doctor's note at issue here, addressed to "whom it may concern" and drafted months after Gail applied for benefits and ceased working, states at most a physical restriction with no supporting reasoning. (A.R. 540.) The Seventh Circuit has declined to consider similar letters as medical opinions worthy of any weight. *See, e.g.*, *Sawyer v. Colvin*, 512 Fed. Appx. 603, 608-

11

09 (7th Cir. 2013); *Nathan C. v. Kijakazi*, No. 19 CV 6992, 2022 WL 3357262, *5 n.5 (N.D. Ill. Aug. 15, 2022). Therefore, the ALJ did not err as to this note.

However, Gail's arguments regarding the ALJ's evaluation of Dr. Pillai's opinion have more traction with the court. The ALJ assigned Dr. Pillai's 2016 function report "no weight," (R. 15, Pl.'s Mem. at 7-12), finding that "the severity of limitation presented was not supported by [Dr. Pillai]'s treatment notes," (A.R. 1189). Specifically, the ALJ took issue with Dr. Pillai's findings concerning Gail's ability to ambulate, need to elevate her leg, and absence from work. (Id. at 1190.) Gail argues that in assigning the opinion no weight the ALJ ignored evidence that contradicted his own opinion and inappropriately "played doctor" by making improper inferences. (R. 15, Pl.'s Mem. at 8-9.)

In a June 2016 function report, Dr. Pillai opined that Gail requires permanent assistance with ambulation because of instability resulting from her knee surgeries and that because of this, she requires a work environment in which she can sit for seven to eight hours and stand or walk only one hour each day. (A.R. 875-76.) She also opined that Gail should never use foot controls because of her right foot drop. (Id. at 876.) The ALJ discredited Dr. Pillai's opinion regarding her difficulty ambulating, noting that "while the objective evidence did show the claimant exhibited gait abnormality, that same evidence did not show inability to ambulate effectively, as defined at section 1.00B2b of Appendix 1." (Id. at 1190.)

First, Dr. Pillai did not opine that Gail could not "ambulate effectively" as defined by the regulations. Rather, she followed the definition provided within the

12

treating source statement itself, which states that "[t]o ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living," and opined that Gail required the use of crutches or a walker to do so. (Id. at 875.) Second, the objective medical record evidence demonstrates that Gail experienced significant difficulties ambulating even with aides, (id. at 973, 991), her foot drop and general instability put her at an increased risk for falls beginning as early as June 10, 2015, (id. at 973), and she often required verbal cues to ambulate without issue, (see, e.g., id. at 1010). When reassessing the issue of ambulatory aides on remand, the ALJ should consider whether the evidence supports Dr. Pillai's opinion that—regardless of whether Gail used crutches, a walker, or two canes—her gait was severely impacted during the relevant period.

Further, the ALJ took issue with Dr. Pillai's opinion that Gail should never use foot controls because she drove herself to some appointments. (Id. at 1190.) However, the ALJ only cited evidence from 2014 and early 2015, and it is unclear whether Gail drove after February 2015. The ALJ assumed that Gail "continued to drive to appointments despite the right foot drop, decreased strength in her right lower extremity, development of right ankle contracture prior to April 1, 2016," despite that information "not being specifically documented" in the records cited. (Id. at 1190.) On remand the ALJ should consider the lack of evidence that Gail drove to appointments after February 2015 along with Dr. Pillai's treatment notes documenting Gail's foot drop issue as early as February 2015. (See id. at 847.)

13

The ALJ also took issue with Dr. Pillai's opinion that Gail's left knee swelling and right knee deformity necessitate limitations in the workplace. (Id. at 1190.) In assigning Dr. Pillai's opinion no weight, the ALJ noted that there is "no objective evidence documenting observation of swelling in [Gail's] legs at that time," and her right knee deformity would not be alleviated by elevation. (Id.) The ALJ was correct that no objective medical evidence—apart from Dr. Pillai's own treatment notes—indicate Gail's need to elevate her leg because of left-knee swelling. The ALJ's finding regarding Gail's left knee is thus "not inconsistent with the other substantial evidence" and not erroneous. *See Bauer*, 532 F.3d at 608 (internal quotation and citation omitted). But as discussed, there is evidence supporting Dr. Pillai's opinion that Gail's right knee deformity warranted functional limitations. The ALJ on remand should consider whether such evidence affects his analysis of Dr. Pillai's opinion.

Finally, the ALJ rejected Dr. Pillai's opinion that Gail would miss more than four days of work per month because it is "a legal issue reserved for the Commissioner." (A.R. 1190.) While "a statement by a medical source that [a claimant is] disabled or unable to work does not mean that [the Commissioner] will determine that [the claimant] is disabled," medical providers' opinions regarding the ability to work may not be ignored. *Bjornson v. Astrue*, 671 F.3d 641, 647 (7th Cir. 2012). Within the same opinion letter, unlike in Dr. Voronov's note discussed above, Dr. Pillai explains in detail Gail's diagnoses, describes her functional limitations, and grounds such limitations in citations to her clinical findings. (See

14

A.R. 869-77.) Describing what a claimant can or cannot do—when grounded in the claimant's symptoms, diagnosis, and prognosis—squarely falls within the regulations' definition of a "medical opinion," and so Dr. Pillai was entitled to make statements to this end. *See* 20 C.F.R. § 404.1527(a)(1). Although the reasoning behind the projected work absence is not explicitly stated, the ALJ should at least consider Dr. Pillai's opinion on missed work in the context of the ample color provided throughout the rest of her treating source statement letter on remand.

Next, Gail seeks a renewed state agency medical consultant review, arguing that significant evidence submitted on remand contradicts the consultants' opinions that she could stand or walk for two hours each day—opinions the ALJ relied on when reaching his decision. Such evidence includes: physical therapy records concerning Gail's gait and ambulatory device use, foot drop, right knee revision surgery, and left carpal tunnel release; Dr. Pillai's treating physician opinion; Botox treatment for right leg stiffness and accompanying spasms; and "MRIs and EMGs not reviewed by the Agency." (R. 15, Pl.'s Mem. at 11.) The admittance of new medical evidence into the record by itself does not warrant a revised review by state agency consultants. *Sheila M. v. Saul*, No. 20 CV 664, 2021 WL 1784775, at *6 (N.D. Ill. May 5, 2021). However, where a state consultant's assessment becomes outdated because of "later evidence containing new, significant medical diagnoses [that] reasonably could have changed the reviewing physician's opinion," the ALJ "should not rely on [the] outdated assessment." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) (citations omitted). The burden is on the claimant to explain

15

how the new medical evidence would undermine the existing state agency consultant's reports. *Keys v. Berryhill*, 679 Fed. Appx. 477, 481 (7th Cir. 2017). Here, Gail has satisfied her burden.[2]

The records showing Gail's use of a walker, two canes, and crutches and her right arthroplasty revision surgery demonstrate "a severe worsening of a condition" warranting an updated review. *Sheila M.*, 2021 WL 1784775, at *6. Both reviewing physicians referred to Gail's use of a cane for indoor and outdoor use and found that her ability to walk was limited without it. (See A.R. 83, 92.) But it was not until May 2015 that Gail's physical therapy notes show her reliance on ambulatory devices requiring the use of both hands. (Id. at 991.) Further, records demonstrating the extent to which Gail's foot drop condition affected her gait postdate the reviewing physicians' opinions. (See id. at 848, 899, 906, 924, 972, 1020.) Finally, Dr. Pillai has treated Gail since 2011 and monitored the progression of her conditions. These records would likely affect the consultants' opinions as to how long Gail could stand or walk during the workday. Because the ALJ relied on these opinions—which may not be outdated—in crafting the RFC, a new state agency analysis is required on remand.

---

[2] Gail fails to show how certain evidence, including "MRIs and EMGs not reviewed by the Agency" and evidence concerning the carpal tunnel release surgery, would impact the agency physicians' opinions. *See Keys*, 679 Fed. Appx. at 481. Furthermore, Gail refers in her function report to her Botox treatment as being unsuccessful, and the consultants found that report fully credible. (A.R. 241.) The additional Botox-related evidence does not constitute new evidence and does not warrant a second review. See *Moreno*, 882 F.3d at 728.

16

**C. RFC Assessment**

Gail argues that the ALJ must revisit Gail's RFC in light of the above findings. The court agrees, but also finds that the ALJ's RFC lacks the requisite logical bridge from Gail's subjective symptom allegations and the medical record evidence to the conclusion. The RFC measures the tasks a person can perform given their limitations based in "all the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). When assessing a claimant's RFC, the ALJ "must give weight to the medical evidence and opinions submitted, unless specific, legitimate reasons constituting good cause are shown for rejecting it." *Chambers v. Saul*, 861 Fed. Appx. 95, 101 (7th Cir. 2021) (quoting *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995)). The ALJ may not engage in "impermissible cherry-picking" by "highlighting facts that support a finding of non-disability while ignoring evidence to the contrary." *Martin*, 950 F.3d at 375. Where ALJs do not rely upon medical opinions, they must "thoroughly discuss[] the medical and other evidence carefully," "consider[] each of [the claimant's] impairments and related function deficits," and explicitly "describe[e] how the evidence supports each [RFC] conclusion." *Norris v. Astrue*, 776 F. Supp. 2d 616, 637 (N.D. Ill. 2011) (citing SSR 96-8p); *see also Nina Joyce H. v. Saul*, No. 18 CV 4913, 2020 WL 212771, at *7 (N.D. Ill. Jan. 14, 2020).

Here, the ALJ concluded that Gail can perform "sedentary work" with certain specifications and physical limitations. (A.R. 1186.) Gail argues that given her severe ambulation and balance difficulties, coupled with her reliance on ambulation

17

devices requiring two hands (*e.g.*, walker, two canes, crutches), it does not follow that she could perform the activities listed in the RFC. (R. 15, Pl.'s Mem. at 13-15.) The court agrees. Without explaining how Gail is capable of performing these activities, the court cannot follow the ALJ's logic that Gail can, for example, occasionally climb ramps and stairs, stoop, kneel, balance, crouch, crawl, and walk for 15 minutes for a total of two hours. As such, the ALJ must revisit this issue on remand.

## Conclusion

For the foregoing reasons, Gail's motion for summary judgment is granted, the government's is denied, and the matter is remanded for further consideration.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**